730 S.E.2d 904

**The STATE, Appellant,**

v.

**Alonzo Craig HAWES, Respondent.**

**Appellate Case No.2011–189167.**

**No. 5001.**

Court of Appeals of South Carolina.

Heard June 4, 2012.

Decided July 18, 2012.

Rehearing Denied Aug. 23, 2012.

Attorney General Alan McCrory Wilson, Chief Deputy Attorney General John W. McIntosh, Senior Assistant Deputy Attorney General Salley W. Elliott, and Assistant Attorney General William M. Blitch, Jr., all of Columbia, for Appellant.

Public Defender Ernest Charles Grose, Jr., of Greenwood, and Assistant Public Defender Donna Katherine Anderson, of Laurens, for Respondent.

FEW, C.J.

Alonzo Craig Hawes pled guilty to voluntary manslaughter for the death of his wife. The State appeals the circuit court's decision to grant Hawes early parole eligibility under section 16–25–90 of the South Carolina Code (Supp.2011). We affirm.

## I. Facts and Procedural History

Hawes and his wife were estranged in 2007 when he shot and killed her. He was indicted for murder but pled guilty to voluntary manslaughter. He also pled guilty to possession of a firearm during the commission of a violent crime. The circuit court sentenced Hawes to twenty-two years in prison for voluntary manslaughter and five years concurrent for possession of a firearm.

At the sentencing hearing, Hawes asserted section 16–25–90 applied to make him parole eligible after serving one-fourth of his voluntary manslaughter sentence. Section 16–25–90 states in part:

[A]n inmate who was convicted of, or pled guilty ... to, an offense against a household member is eligible for parole after serving one-fourth of his prison term when the inmate at the time he pled guilty ... presented credible evidence of a history of criminal domestic violence, as provided in Section 16–25–20, suffered at the hands of the household member.

Hawes presented the following evidence that he suffered criminal domestic violence (CDV) at the hands of his wife:

1. A 1996 municipal court conviction in which Hawes' wife pled guilty to CDV against Hawes. Hawes was also convicted of CDV against her for the same incident.

2. A separate CDV indictment, pending at the time of the 1996 incident, in which Hawes' wife allegedly struck and kicked him.

3. A July 2006 CDV indictment stating she did "willfully or unlawfully cause or offer or attempt to cause physical harm or injury to his family or household member, to wit: Alonzo Craig Hawes, with apparent present ability under circumstances reasonably creating fear of imminent peril."

4. A November 2006 incident report stating Hawes called the police complaining about a domestic disturbance in which his wife had a knife. When the police arrived, Hawes was gone, and his wife denied anything "other than a verbal altercation" occurred.

5. A 2007 incident in which Hawes claimed his wife stabbed his hand. Hawes sought treatment at a hospital and told the doctor his wound resulted from a dirt bike accident.

6. Recordings of voicemail messages Hawes' wife left on his cell phone and numerous arguments and conversations between them.[1]

7. The testimony of Brittany Roundtree, Hawes' stepdaughter and his wife's daughter, that Hawes and her mother argued a lot after her mother discovered him cheating on her. She said Hawes was the primary instigator of violence in the relationship and he "sometimes" "put his hand on" her mother.

8. The testimony of an expert in forensic psychiatry that Hawes described a history of mutual violence, "that he had certainly abused [his wife] in the past and she had also physically abused him in the past."

---

1. In the recordings, Hawes' wife threatened to kill him and his girlfriend numerous times. However, we agree with the circuit court that the recordings are not evidence of CDV because the recordings do not indicate she had "apparent present ability[,] under circumstances reasonably creating fear of imminent peril[,]" "to cause physical harm or injury" to Hawes. S.C.Code Ann. § 16–25–20(A)(2) (Supp.2011). Nevertheless, the recordings aid in understanding the nature of the relationship between Hawes and his wife, which is relevant to determining whether section 16–25–90 should apply.

After weighing the evidence, the circuit court found Hawes satisfied the requirements of section 16–25–90 and granted him early parole eligibility.

## II. The State's Issue on Appeal

We address three issues on appeal: (1) the circuit court used the wrong definition of "a history" of CDV under section 16–25–90; (2) the court erroneously determined it was required to find Hawes presented a history of CDV based solely on his wife's 1996 CDV conviction and 2006 CDV indictment; and (3) the legislature did not intend section 16–25–90 to reduce an inmate's sentence when the CDV evidence presented demonstrated mutual domestic violence in which the inmate was the aggressor and primary instigator of the domestic violence.

It is questionable whether these issues are properly preserved and presented to this court. At the sentencing hearing, the State made arguments related to issues one and three, and the court addressed both points in its order. As to issue two, Hawes argued that his wife's CDV conviction and indictment alone were sufficient to prove a history of CDV under section 16–25–90. The State argued in response that the statute required "a pattern of domestic violence," presumably meaning more than one or two incidents. Because they are not clearly unpreserved, we address the merits of the issues. *Cf. Atl. Coast Builders & Contractors, LLC v. Lewis,* Op. No. 27044 (S.C. Sup.Ct. filed May 16, 2012) (Shearouse Adv. Sh. No. 17 at 15, 21) ("While it may be good practice for us to reach the merits of an issue when error preservation is doubtful, we should follow our longstanding precedent and resolve the issue on preservation grounds when it clearly is unpreserved.").

As to the merits of the State's appeal, we find the State has shown no error of law. As we will explain, there is evidence in the record to support the circuit court's factual findings. Therefore, we find no abuse of discretion and affirm. *See State v. Blackwell–Selim,* 392 S.C. 1, 3, 707 S.E.2d 426, 427–28 (2011) (per curiam) (stating on appeal from an early parole eligibility determination under section 16–25–90 that an appellate court may "not reevaluate the facts based on its own view

of the preponderance of the evidence but simply determines whether the trial judge's ruling is supported by any evidence" and is "bound by factual findings of the trial court unless an abuse of discretion is shown").

### III. The Definition of "a history" Under Section 16–25–90

The State argues the circuit court used the wrong definition of the term "a history" of CDV in section 16–25–90. Because the statute does not define the term, the State asserts the definition should be determined based on legislative intent. In its brief, the State maintains the "clear legislative intent of section 16–25–90 is to provide mitigation of the sentence of someone who committed an offense against their household member after suffering domestic violence at the hands of the victim." The State argues the court did not consider the legislative intent of section 16–25–90 but rather found the requirement to prove "a history" of CDV satisfied by one or two documented CDV incidents. We disagree with the State's interpretation of the circuit court's definition of the term "a history."

The circuit court specifically provided a definition of a history in its order which the State does not argue is incorrect on appeal. The court defined a history as follows:

> For purposes of the case before me, the court interprets reference to "a history" to connote not only consideration of the number of prior instances of domestic violence, but also the relative severity of the various instances. In this way, the court may properly weigh the relative egregiousness of the conduct. Put another way, more serious or violent instances of criminal domestic violence would be entitled to substantially more consideration, even though fewer in number, than less egregious, but more frequent instances.

The State did not challenge the circuit court's definition of a history in a motion to reconsider. On appeal, the State offered no definition in its brief. At oral argument, the State argued the definition of a history under section 16–25–90 was a "circumstance in which an individual is repeatedly the victim and not repeatedly the primary instigator of a series of violence—criminal domestic violence—at the hands of the

victim." While we neither adopt nor reject the definition of a history used by the circuit court, nor that proposed by the State at oral argument,[2] we disagree with the State's assertion that the circuit court failed to consider the legislative intent behind section 16–25–90 to reach its definition of a history.

We find the circuit court specifically considered the legislative intent behind section 16–25–90 both in determining the definition it used for a history of CDV and in determining whether Hawes satisfied that definition. The court stated the legislative intent behind section 16–25–90 is "to permit some middle ground for those instances where there would be insufficient evidence of abuse to maintain a defense under [Battered Spouse's Syndrome in section] 17–23–170, but where sufficient evidence of abuse may exist to mitigate somewhat the usual non-parole nature of a homicide sentence." In some future case, this court or the supreme court may be required to specifically define "a history" to resolve the controversy before the court. In this case, however, defining the term is not necessary because we find the circuit court did precisely what the State contends it failed to do—it considered the legislative intent of section 16–25–90. We find no error.

### IV. Whether the Circuit Court Erred in Determining it was Required to Find Hawes Satisfied Section 16–25–90

■ The State argues the circuit court incorrectly determined it was compelled to find Hawes proved a history of CDV based solely on evidence of his wife's 1996 CDV conviction and 2006 CDV indictment. The State asserts this error is found in the following passage at the conclusion of the court's order:

This court is called upon to make a ruling based solely on the evidence and the applicable law. That the victim and defendant argued and fought is not, in and of itself, sufficient to warrant application of the section. Coupled, however, with the documented convictions for CDV and the other

---

2. We do reject the definition of a history argued by Hawes—that one incident of CDV by the victim against the defendant automatically entitles the defendant to early parole eligibility, with no discretion to be exercised by the circuit court. However, the circuit court did not employ this definition.

competent evidence of a mutually violent relationship, and despite (or perhaps because of) the statute's peculiarities as explained . . ., this court *is compelled* to find that [Hawes] has met his burden.

(emphasis added). The State interprets the phrase "is compelled" to mean that once the court was presented with Hawes' wife's 1996 CDV conviction and 2006 CDV indictment, it felt it *must* find Hawes entitled to application of section 16–25–90. Therefore, the State argues the trial court abused its discretion by failing to use its discretion in applying the definition of a history of CDV to the facts of this case. We disagree with the State's interpretation of the circuit court's order.

The court discussed evidence it found weighed in favor of and against the application of section 16–25–90. The court found evidence relating to Hawes being the primary instigator and to the remote 1996 CDV cross-warrant incident weighed against application. The court also found the 1996 CDV conviction, the 2006 CDV indictment, and the psychiatrist's report were evidence that weighed in favor of application. Because the circuit court considered each factor the State contends it should have considered, we find the court did exercise its discretion in applying the statute.

The State's argument is essentially that it disagrees with the discretionary decision of the circuit court. However, in an appeal from a parole eligibility determination under section 16–25–90, we are not permitted to reverse the circuit court's factual findings when there is evidence to support them. *Blackwell–Selim*, 392 S.C. at 3, 707 S.E.2d at 427–28. We find evidence to support the circuit court's ruling that Hawes proved a history of CDV under section 16–25–90.

Additionally, we believe the State's insistence on arguing that the circuit court felt compelled to grant Hawes early parole eligibility is based upon the circuit court's incorrect citation to a prior version of section 16–25–90. Prior to 2004, section 16–25–90 provided that an inmate *"shall be* eligible" for early parole eligibility if he proves a history of CDV suffered at the hands of the victim. (emphasis added). In 2003, the statute was amended to state *"is* eligible." 2003 S.C. Acts 1546, 1552 (stating the "act takes effect January 1, 2004,

and applies to all offenses occurring on or after that date") (emphasis added). The circuit court incorrectly quoted the "shall be eligible" version of the statute in its order, and emphasized the language in making its decision. The circuit court wrote "use of the word 'shall' in the statute notes mandatory, not precatory, language so that, if the court were to find a credible history of domestic violence suffered at the hands of the victim, the court is required to authorize the application of the statute."

However, neither party brought the mistake to the circuit court's attention, nor did the parties even recognize the error in their briefs to this court. We cannot discount the significance of the circuit court's use of the incorrect version of the statute. However, because the mistake was not raised to the circuit court, it was never given the opportunity to correct itself, and the error "clearly is unpreserved" for our review on appeal. *Atl. Coast Builders & Contractors, LLC,* (Shearouse Adv. Sh. No. 17 at 21).

## V. Evidence of Mutual Domestic Violence

Finally, the State argues the legislature did not intend for section 16–25–90 to apply to someone like Hawes, whose evidence for application of the statute shows mutual domestic violence in which he was the aggressor as to most of the domestic violence. One witness testified that Hawes was the primary instigator of the violence. We agree that there was mutual violence between Hawes and his wife and that this evidence weighs against application of the section. However, that fact does not automatically preclude Hawes from obtaining relief under section 16–25–90. Rather, the mutual nature of the violence is one factor the court should consider in exercising its discretion to decide whether the defendant has proven a history of CDV such that he is entitled to early parole eligibility.

The circuit court in this case did consider the mutual nature of the violence. The court specifically stated "that the statute makes no allowance or exception for cross-warrant situations in which both husband and wife are charged and convicted out of the same incident." Nevertheless, the court proceeded to "find it proper for the court to consider such

circumstances in weighing the evidence presented." The court found Hawes and his wife's 1996 CDV convictions involved "a cross-warrant incident," "that there were times when both parties were primarily responsible for instigating the arguments," and "this is a close case ... [c]ertainly, [Hawes] was also responsible for several instances of domestic violence against his wife." After weighing this evidence that the State asserts the circuit court should consider, the court found Hawes proved a history of CDV suffered at the hands of his wife by a preponderance of the evidence. We find evidence to support the circuit court's decision and no error of law.

## VI. Conclusion

We find the circuit court acted within its discretion in granting early parole eligibility to Hawes pursuant to section 16–25–90.

**AFFIRMED.**

HUFF and SHORT, JJ., concur.